**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LINDA A. MASTRO,

*Appellant*,

v.

JAMES F. RIGBY, JR., Trustee, solely
in his capacity as Chapter 7 trustee
of the bankruptcy estate of Michael
R. Mastro,

*Appellee*.

No. 13-35209

DC No.
2:11 cv-2077
BJR

OPINION

Appeal from the United States District Court
for the Western District of Washington
Barbara Jacobs Rothstein, Senior District Judge, Presiding

Argued and Submitted
July 8, 2014—Seattle, Washington

Filed August 22, 2014

Before: Arthur L. Alarcón, A. Wallace Tashima,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Tashima

## SUMMARY[*]

### Bankruptcy

The panel reversed the district court's dismissal, pursuant to the fugitive disentitlement doctrine, of an appeal by a nonclaimant to the bankruptcy estate from the bankruptcy court's judgment in a fraudulent conveyance case.

The trustee for the bankruptcy estate of the nonclaimant's husband brought an adversary proceeding against her, alleging that she fraudulently transferred estate assets in violation of 11 U.S.C. §§ 544 and 548 and Wash. Rev. Code, ch. 19.40. After trial, the bankruptcy court held the nonclaimant liable for fraudulent transfers and ordered her to turn over certain specified items of personal property. Instead, she fled to France.

The panel held that the bankruptcy court had authority to enter judgment based on the parties' consent. The panel concluded that after *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014) (holding that bankruptcy court generally cannot enter final judgment on *Stern* claims, or proceedings that are defined as "core" under 11 U.S.C. § 157(b) but that may not, as a constitutional matter, be adjudicated as such), this court's holding in *Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553, 557 (9th Cir. 2012) (ruling that parties' consent gives bankruptcy court jurisdiction over *Stern* claims), remained good law.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that district court abused its discretion in dismissing the appeal under the fugitive disentitlement doctrine because no necessity justified invoking the rule of disentitlement. Declining to hear the merits of the appeal in the first instance, the panel remanded the case to the district court.

## COUNSEL

Michael E. Gossler (argued), Montgomery Purdue Blankinship & Austin PLLC, Seattle, Washington, for Appellant.

Spencer Hall (argued) and Janet D. McEachern, Hall Zanzig Claflin McEachern PLLC, Seattle, Washington, for Appellee.

## OPINION

TASHIMA, Circuit Judge:

Linda Mastro ("Linda"), a nonclaimant to the bankruptcy estate, appeals the district court's dismissal of her appeal of the bankruptcy court's judgment in this fraudulent conveyance case. We hold that the bankruptcy court had authority to enter judgment based on the parties' consent. We conclude, however, that the district court abused its discretion in dismissing Linda's appeal under the fugitive disentitlement doctrine, because no necessity justified invoking the rule of disentitlement in this case.

## I.

James Rigby (the "Trustee"), in his capacity as Trustee for the Chapter 7 bankruptcy estate of Linda's husband, Michael Mastro ("Michael"), filed an adversary proceeding against Linda.  The Trustee alleged, *inter alia*, that Linda fraudulently transferred estate assets in violation of 11 U.S.C. §§ 544 and 548, and Wash. Rev. Code, ch. 19.40.  Linda did not file any counterclaims against the bankruptcy estate.

The bankruptcy court tried the adversary proceeding, with Linda and other witnesses appearing and testifying at trial.  It concluded that Linda and Michael utilized an increasingly elaborate series of transactions to shield estate assets and hinder, defraud, or delay their creditors.  *See Rigby v. Mastro (In re Mastro)*, 465 B.R. 576, 601–15 (Bankr. W.D. Wash. 2011).  The bankruptcy court held Linda liable for fraudulent transfers under 11 U.S.C. §§ 544 and 548, and Wash. Rev. Code, ch. 19.40.  It ordered Linda to turn over certain specified items of personal property, including two "big" diamond rings, or "the value of such items," along with gold bars and money worth $1,394,406.00.

Linda appealed to the district court, arguing that the evidence did not support the bankruptcy court's judgment or its finding of liability.  Linda, however, went missing when she appealed.  Eventually, Linda was discovered by authorities living in France with Michael, where she has declared her intent to remain.

Soon after Linda was found in France, she was indicted on criminal bankruptcy charges arising from this adversary proceeding and the bankruptcy court's opinion.  Linda has evaded prosecution, however, because of her presence in

France, and because a French Court of Appeal has denied U.S. requests to extradite Linda and Michael.

Due to Linda's flight, the district court refused to reach the merits of Linda's civil bankruptcy appeal. Instead, it dismissed Linda's appeal under the fugitive disentitlement doctrine. The district court determined that Linda "is a fugitive," that her "fugitive status is connected to this appeal," and that her "blatant disregard for the authority of the judicial system renders her ineligible to pursue an appeal."

Linda now appeals to this court, arguing that the district court abused its discretion in dismissing her appeal under the fugitive disentitlement doctrine. She seeks remand to the district court for its consideration of the merits of her appeal.

## II.

Before reaching the question of whether the district court correctly invoked the fugitive disentitlement doctrine, we must first assure ourselves that the bankruptcy court and the district court had jurisdiction. We have an obligation to determine our jurisdiction and that of the lower courts, even when the parties do not contest it. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). The parties here agree that the bankruptcy court had the authority and jurisdiction to enter final judgment under 28 U.S.C. § 157(b).[1]

---

[1] Linda initially contested the bankruptcy court's jurisdiction over this adversary proceeding. Soon after the Trustee filed the adversary proceeding, Linda moved to withdraw the reference to the bankruptcy court and to proceed instead before the district court. The district court agreed that Linda was entitled to proceed in an Article III court given the

The Supreme Court, however, has "held invalid" the "application of . . . the procedures of § 157(b)" to fraudulent conveyance actions involving the statutes at issue here. *Exec. Benefits Ins. Agency v. Arkison ("Arkison")*, 134 S. Ct. 2165, 2174 (2014) (internal quotation marks omitted). Under *Arkison*, we cannot accept the parties' agreement that the bankruptcy court had jurisdiction under § 157(b). We hold instead that the bankruptcy court had jurisdiction to enter final judgment under 28 U.S.C. § 157(c)(2).

By statute, Congress authorized bankruptcy judges to "hear and determine . . . all core proceedings," and to "enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1). However, as a constitutional matter, "some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court" to final judgment. *Arkison*, 134 S. Ct. at 2172. These claims are called "*Stern* claims," so named after the Supreme

---

Trustee's fraudulent transfer claims, but denied Linda's motion to withdraw the reference as premature, concluding that the non-Article III bankruptcy court was "manifestly more experienced" at overseeing the pretrial adversary proceedings.

Linda, however, never renewed her opposition to proceeding before the bankruptcy court, and she never refiled her motion to withdraw the reference. Instead, at the close of pretrial proceedings, Linda expressly consented to trial by the bankruptcy court. The bankruptcy court tried the adversary proceeding and concluded that the adversary proceeding was "a core proceeding under 28 U.S.C. § 157(b)(2)(B), (C), (E), (H), (K) and (O)," over which it had jurisdiction to enter final judgment. *See In re Mastro*, 465 B.R. at 599–600. Before the district court, Linda again accepted the bankruptcy court's authority to enter final judgment. Linda stated that the adversary proceeding was a core proceeding under § 157(b), in which the bankruptcy court entered final judgment. Before this court, Linda and the Trustee both accept the bankruptcy court's jurisdiction to enter final judgment under § 157(b).

Court's decision in *Stern v. Marshall*, 131 S. Ct. 2594 (2011).
*Stern* claims are claims "designated for final adjudication in
the bankruptcy court as a statutory matter, but prohibited
from proceeding in that way as a constitutional matter."
*Arkison*, 134 S. Ct. at 2170.

The adversary proceeding against Linda involved *Stern*
claims.  The Trustee alleged, among other things, that Linda
fraudulently transferred assets in violation of 11 U.S.C.
§§ 544 and 548, and Wash. Rev. Code, ch. 19.40.   The
bankruptcy court then found Linda liable under these statutes.

We have previously considered exactly the same claims
at issue here – "claims of fraudulent conveyance under
11 U.S.C. § 544 [and § 548], and under state law, Wash. Rev.
Code, ch. 19.40."  *Arkison*, 134 S. Ct. at 2169 n.1; *see Exec.
Benefits Ins. Agency v. Arkison (In re Bellingham Ins.
Agency, Inc.) ("In re Bellingham")*, 702 F.3d 553, 557 (9th
Cir. 2012), *aff'd*, 134 S. Ct. 2165 (2014).  And we have "held
that [these] fraudulent conveyance claims . . . are *Stern*
claims—that is, proceedings that are defined as 'core' under
§ 157(b) but may not, as a constitutional matter, be
adjudicated as such."  *Arkison*, 134 S. Ct. at 2172 (citing *In
re Bellingham*, 702 F.3d at 562); *see In re Bellingham*,
702 F.3d at 565 (holding that "bankruptcy courts [do not]
have the general authority to enter final judgments on
fraudulent conveyance claims" brought under these statutes).

Because a bankruptcy court generally cannot enter final
judgment on a *Stern* claim, "when a bankruptcy court is
presented with [a *Stern* claim], the proper course is to issue
proposed findings of fact and conclusions of law."  *Arkison*,
134 S. Ct. at 2170.  "The district court will then review the
claim *de novo* and enter judgment."  *Id.*

This "proper course" was not followed in Linda's case. Instead of issuing proposed findings of fact and conclusions of law, the bankruptcy court entered judgment deciding the *Stern* claims.[2]

Nevertheless, under our holding in *In re Bellingham*, we are satisfied that the bankruptcy court did not exceed its jurisdiction. The parties consented to adjudication by the bankruptcy court. This consent, we have held, gives a bankruptcy court jurisdiction over *Stern* claims. *See In re Bellingham*, 702 F.3d at 566 (holding that a party's "right to a hearing in an Article III court" in "fraudulent conveyance suits . . . is waivable" if the parties consent to adjudication by the bankruptcy court).

*In re Bellingham* continues to bind us. As a three-judge panel, we may not depart from *In re Bellingham* unless it is "clearly irreconcilable" with an intervening decision of the Supreme Court. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). And *In re Bellingham* is not clearly irreconcilable with any intervening Supreme Court decision.

In *In re Bellingham*, we held that "consent permits a non-Article III judge to decide finally" a *Stern* claim. *In re Bellingham*, 702 F.3d at 567. In *Arkison*, the Supreme Court affirmed our decision in *In re Bellingham* on other grounds. The Supreme Court held that even if consent does *not* permit a bankruptcy court to decide finally a *Stern* claim, any error is "cured" when a district court conducts "*de novo* review"

---

[2] The district court, of course, did not review the merits of the *Stern* claims, *de novo* or otherwise, having dismissed the appeal under the fugitive disentitlement doctrine.

and enters "its own valid final judgment." *Arkison*, 134 S. Ct. at 2175.

The Supreme Court's decision "not . . . to address . . . whether Article III permits a bankruptcy court, with the consent of the parties, to enter final judgment on a *Stern* claim" leaves intact our holding that consent does, in fact, permit a bankruptcy court to enter final judgment on a *Stern* claim. *Id.* at 2170 n.4. *Arkison* does not "undercut the theory or reasoning underlying [*In re Bellingham*] in such a way that the cases are clearly irreconcilable." *Miller*, 335 F.3d at 900; *see, e.g.*, *Kismit Acquisition, LLC v. Icenhower (In re Icenhower)*, No. 10-55933, 2014 WL 2978491, at \*3 (9th Cir. July 3, 2014) (concluding, based on *In re Bellingham*, that appellants "waived any objection . . . to the bankruptcy court's entry of final judgment," even though *In re Bellingham*'s holding that such objections are waivable was affirmed on other grounds in *Arkison*); *Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 530 (9th Cir. 2013) (relying on circuit precedent for specific rules of law, even after the Supreme Court affirmed that precedent on other grounds). *Arkison* simply does "not decide whether" or not our holding in *In re Bellingham* was correct. *Arkison*, 134 S. Ct. at 2175. *In re Bellingham* therefore remains good law.

Because *In re Bellingham* remains good law, the bankruptcy court had authority to enter final judgment. Under *In re Bellingham*, a bankruptcy court may constitutionally enter final judgment on a *Stern* claim against a nonclaimant to the bankruptcy estate with the consent of the parties. Here, the parties expressly consented to trial before the bankruptcy court. This consent permitted the bankruptcy court to enter final judgment on the Trustee's *Stern* claims under 28 U.S.C. § 157(c)(2). *See Arkison*, 134 S. Ct. at 2174.

It also permitted the district court to hear Linda's appeal from the bankruptcy court under 28 U.S.C. § 158(a)(1), and this court to hear Linda's appeal from the district court under § 158(d)(1).

## III.

We now turn to the question whether the district court abused its discretion when it invoked the fugitive disentitlement doctrine to dismiss Linda's appeal. *See Bhasin v. Gonzales*, 423 F.3d 977, 989 (9th Cir. 2005) (reviewing the application of the fugitive disentitlement doctrine for abuse of discretion); *accord Bano v. Union Carbide Corp.*, 273 F.3d 120, 125 (2d Cir. 2001); *FDIC v. Pharaon*, 178 F.3d 1159, 1162 (11th Cir. 1999). We conclude that it did.

In its earliest form, the fugitive disentitlement doctrine allowed courts to dismiss appeals by defendants in criminal cases who had become fugitives from justice. *See Smith v. United States*, 94 U.S. 97, 97–98 (1876). Originally, the doctrine sought to prevent the entry of unenforceable judgments against absent criminal defendants. *See id*. Later, courts developed new justifications for the doctrine. A defendant's fugitive status, it was said, "disentitle[d] the defendant to call upon the resources of the [c]ourt" whose very authority he was flouting, *Molinaro v. New Jersey*, 396 U.S. 365, 366 (1970) (per curiam) – a theory akin to abandonment or waiver. Additionally, it was thought that the fugitive disentitlement doctrine "discourage[d] the felony of escape," "encourage[d] voluntary surrenders," and "promote[d] the efficient, dignified operation" of the courts. *Estelle v. Dorrough*, 420 U.S. 534, 537 (1975) (per curiam).

As courts developed new justifications for the fugitive disentitlement doctrine, they also applied that doctrine in new contexts. By the last decades of the twentieth century, courts had extended the fugitive disentitlement doctrine to a wide range of non-criminal cases – cases in fields like tax, *Conforte v. Commissioner*, 692 F.2d 587, 590 (9th Cir. 1982), immigration, *Arana v. INS*, 673 F.2d 75, 77 (3d Cir. 1982) (per curiam), and family law, *Prevot v. Prevot*, 59 F.3d 556, 567 (6th Cir. 1995).

Faced with this expansion of the fugitive disentitlement doctrine, the Supreme Court significantly limited the application of the doctrine in non-criminal contexts. In *Degen v. United States*, 517 U.S. 820 (1996), the Supreme Court held that federal courts lacked inherent power to dismiss a civil forfeiture appeal, where the appellant was a fugitive criminal defendant.[3] *Id.* at 821–29. Acknowledging the government's interest in preventing Degen from abusing civil discovery to gain an advantage in his criminal case (a tactic that was available to Degen only because of his fugitive status), *id*. at 825–27, the Supreme Court nevertheless declared that even this interest did not necessitate "the harsh sanction of absolute disentitlement," *id*. at 827. Likewise, after reviewing the fugitive disentitlement doctrine's other rationales – including preserving the dignity of the courts and deterring flight from prosecution – the Court concluded that "disentitlement is too blunt an instrument for advancing" those interests, even when those "interests are substantial." *Id*. at 828.

---

[3] Congress later conferred this power on the federal courts by statute. *See* Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (codified principally at 18 U.S.C. § 983 and 28 U.S.C. § 2466).

*Degen* thus stands for the proposition that the fugitive disentitlement doctrine should be narrowly applied and subject to significant scrutiny outside of the direct criminal appeal context. *Degen* makes clear that fugitive disentitlement is an exceptionally "harsh sanction," to be disfavored whenever its application is not a matter of "necessity." *Id.* at 827. It cautions against the "danger of overreaching," and "counsel[s] restraint in resorting to inherent power." *Id.* at 823.

Since *Degen* was decided, we have taken an increasingly narrow view of the fugitive disentitlement doctrine.[4] We have recognized that fugitive disentitlement is "a severe sanction that courts should not lightly impose." *United States v. Murguia-Oliveros*, 421 F.3d 951, 954 (9th Cir. 2005). Frequently, we have declined to decide appeals based on the doctrine, or reversed dismissals under the doctrine. *See, e.g.*, *Mamigonian v. Biggs*, 710 F.3d 936, 940 (9th Cir. 2013); *Sun v. Mukasey*, 555 F.3d 802, 805 (9th Cir. 2009); *Bhasin*, 423 F.3d at 988; *United States v. Gonzalez*, 300 F.3d 1048, 1051 (9th Cir. 2002). After *Degen*, we have generally confined our application of the fugitive disentitlement doctrine to challenges to detentions, where an appellant's status as a fugitive from confinement clearly undercuts his challenge to his confinement. *See, e.g.*, *Williams v. Alameida*, 511 F.3d 973, 974 (9th Cir. 2007) (dismissing criminal fugitive's 42 U.S.C. § 1983 challenge to his incarceration); *Parretti v. United States*, 143 F.3d 508, 509

---

[4] We do not discuss statutory dismissals under the Fugitive Disentitlement Statute, 28 U.S.C. § 2466, which are rooted in an act of Congress. The dismissal in this case, by contrast, concerns a court's *inherent* powers under the fugitive disentitlement doctrine.

(9th Cir. 1998) (en banc) (dismissing criminal fugitive's challenge to his pretrial detention).

The district court's application of the fugitive disentitlement doctrine to Linda's appeal is inconsistent with *Degen* and lacks support in our post-*Degen* precedents. The district court's dismissal of Linda's civil bankruptcy appeal was based solely on Linda's "blatant disregard for the authority of the judicial system." But disregard for the authority of a different court does not constitute a "necessity" capable of "justify[ing] the rule of disentitlement in this case." *Degen*, 517 U.S. at 829; *see also id.* at 828 (recognizing that the Supreme Court has "held it unconstitutional to use disentitlement similar to this as punishment [even] for rebellion against the United States"). Because the district court dismissed Linda's civil bankruptcy appeal on a basis that *Degen* rejected, that dismissal was, as in *Degen*, "an arbitrary response" to Linda's flight from a related criminal prosecution.[5] *Id.*

The district court erred as a matter of law when it determined that the fugitive disentitlement doctrine applied

---

[5] The Supreme Court in *Degen* acknowledged the potential unenforceability of a judgment against a fugitive party as a possible justification for applying the fugitive disentitlement doctrine. *See Degen*, 517 U.S. at 824–25; *see also Walsh v. Walsh*, 221 F.3d 204, 215 (1st Cir. 2000) (observing that the *Degan* Court rejected indignity and deterrence as grounds for applying the fugitive disentitlement doctrine and concluding that the justifications for the doctrine post-*Degen* included "prejudice to the opponent, delay, frustration, and unenforceability"). Here, the district court did not cite any concerns with unenforceability as the basis for its decision and made no finding of fact on this front. Further, the record does not suggest that Linda's absence impedes the enforcement of a judgment against her.

to Linda's civil bankruptcy appeal. Because a "district court by definition abuses its discretion when it makes an error of law," *Koon v. United States*, 518 U.S. 81, 100 (1996); *see also United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc), *full court rehearing denied*, 611 F.3d 1098 (9th Cir. 2010), the district court abused its discretion by dismissing Linda's appeal under the fugitive disentitlement doctrine.

## IV.

Having rejected the Trustee's bid for dismissal under the fugitive disentitlement doctrine, the Trustee nevertheless invites us to affirm the bankruptcy court's judgment in the first instance on appeal. We decline the Trustee's invitation.

When a district court improperly dismisses a bankruptcy appeal without reaching the merits, we generally reverse the district court's dismissal and remand for the district court's consideration of the appeal in the first instance. *See, e.g.*, *Brown v. Wilshire Credit Corp. (In re Brown)*, 484 F.3d 1116, 1123 (9th Cir. 2007) ("revers[ing] the district court's order dismissing Brown's appeal . . . and remand[ing] for the district court's consideration of his appeal" from the bankruptcy court). Nothing in the record concerning Linda's appeal makes it an exception to this general rule. We therefore decline to consider the merits of Linda's appeal in the first instance.

## V.

We reverse the district court's dismissal of Linda's appeal under the fugitive disentitlement doctrine, and we remand to

the district court with instructions to consider the merits of Linda's appeal from the bankruptcy court's judgment.

**REVERSED and REMANDED.**