**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE WRIGHTWOOD GUEST RANCH, LLC,

*Debtor*,

No. 16-56856

D.C. No.
5:16-cv-01768-MWF

REID AND HELLYER, APC,

*Appellant*,

v.

RICHARD J. LASKI, Chapter 11 Trustee; ARENT FOX, LLP,

*Appellees.*

IN RE WRIGHTWOOD GUEST RANCH, LLC,

*Debtor*,

No. 16-56869

D.C. No.
5:16-cv-01768-MWF

WALTER WILHELM BAUER, a Professional Corporation,

*Appellant,*

v.

OPINION

RICHARD J. LASKI, Chapter 11
Trustee; ARENT FOX, LLP,
                              *Appellees.*

Appeal from the United States District Court
for the Central District of California
Michael W. Fitzgerald, District Judge, Presiding

Argued and Submitted April 13, 2018
Pasadena, California

Filed July 25, 2018

Before:  John M. Rogers,* Jay S. Bybee,
and Paul J. Watford, Circuit Judges.

Opinion by Judge Rogers

---

* The Honorable John M. Rogers, United States Circuit Judge
for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

# SUMMARY**

## Bankruptcy

The panel affirmed the district court's judgment in two law firms' appeals from the bankruptcy court's order approving a settlement of an involuntary Chapter 11 bankruptcy.

The panel held that the firms, representing the debtor and the unsecured creditors' committee, forfeited their objection to the settlement agreement because: (1) neither firm, on its own behalf, explicitly objected to the settlement or entered an appearance at the settlement hearing; and (2) the record evidence that the bankruptcy court and trustee understood the firms to be implicitly objecting was not clear enough to overcome those failures. Assuming without deciding that the law firms' challenge should consequently be reviewed for plain error, rather than dismissed without reaching the merits, the panel concluded that the bankruptcy court did not err in approving the settlement agreement.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Scott Talkov (argued) and Douglas A. Plazak, Reid & Hellyer APC, Riverside, California; Riley C. Walter and Matthew P. Bunting, Walter Wilhelm Law Group, Fresno, California; for Appellant.

Moriah Douglas Flahaut (argued) and Aram Ordubegian, Arent Fox LLP, Los Angeles, California, for Appellees.

**OPINION**

ROGERS, Circuit Judge:

This consolidated bankruptcy appeal concerns a challenge, by two law firms who below represented the debtor and unsecured creditors' committee, respectively, to a court-approved settlement of an involuntary Chapter 11 bankruptcy. The question before us is whether the law firms forfeited their objection to the bankruptcy court's order approving that settlement. The answer in turn depends on whether the firms objected to the settlement and appeared at the hearing concerning it on their own behalves, or only on behalf of their clients. Because neither firm, on its own behalf, explicitly objected to the settlement or entered an appearance, and because the record evidence that the bankruptcy court and trustee understood the firms to be implicitly objecting is not clear enough to overcome those failures, the firms forfeited their objection to the settlement agreement. Assuming without deciding that their challenge should consequently be reviewed for plain-error, rather than dismissed without our reaching the merits, we find that the bankruptcy court did not err in approving the settlement agreement. We therefore affirm the district court.

In August of 2015, creditors filed an involuntary-bankruptcy petition against the debtor, Wrightwood Guest Ranch, LLC, under Chapter 11 of the bankruptcy code. Richard Laski, here the appellee, was appointed trustee. GreenLake Real Estate Fund, LLC, which is not party to these appeals, submitted a valid $9.6-million-dollar claim secured by the estate's principal asset, a 300-acre piece of real property. After some time, it became clear to Laski that selling that property to a third-party was unlikely, but Laski eventually reached an agreement with GreenLake under which it would purchase the property through an affiliated entity. Laski and GreenLake agreed to settlement terms, which depended on the proposed sale, and moved for approval of that settlement in the bankruptcy court.

Under the settlement terms, an affiliated entity would submit an $8.5-million stalking-horse bid on the property, and GreenLake would agree to limit its secured claim to that amount. More relevant to this appeal, GreenLake agreed to carve out $150,000 from its proceeds to cover expenses and pay the unsecured creditors, and another $350,000 to pay trustee Laski and his professionals. The latter sum was a surcharge under 11 U.S.C. § 506(c), which allows a trustee to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . ."

Some parties were not satisfied. Under the settlement, unsecured claims would be paid pennies on the dollar, and some creditors believed that the property was worth much more than the agreed-upon price. The settlement was a windfall for Laski and GreenLake, these claimants protested, in which the former got a generous payday while the latter got the property at a below-market price, all at the expense

of the unsecured creditors and the administrative claimants like Reid & Hellyer (R&H) and Walter Wilhelm Bauer (WWB), the two law firms who bring this appeal. R&H represented the Official Committee of Unsecured Creditors (the creditors' committee), and WWB represented the debtor.

The creditors' committee and Richard and July Hallett (who operated, and were also unsecured creditors of, debtor-company Wrightwood) each filed written objections to Laski's motion for approval of the settlement. Nobody filed a written objection on behalf of R&H or WWB, or any other administrative claimant for that matter. The bankruptcy court held a hearing on the sale and settlement on July 19, 2016. Douglas Plazak of R&H entered an appearance on behalf of the creditors' committee, and Holly Estes of WWB appeared telephonically on behalf of the debtor. Neither R&H nor WWB stated that it was appearing on its own behalf, nor was such an appearance entered on the record. After holding a hearing, the bankruptcy court granted the sale motion and approved the settlement in accordance with Federal Rule of Bankruptcy 9019.

R&H filed an appeal of the settlement order to the district court, and moved to withdraw as counsel for the creditors' committee, but the bankruptcy court denied the withdrawal motion. WWB appealed the settlement order about a week later. Neither party sought a stay, and so the sale progressed: the bankruptcy court entered a sale order on August 30, which was not appealed, and the sale of the property closed on September 9, 2016.

The district court consolidated the two firms' appeals. Laski filed a motion to dismiss the appeals, arguing that R&H and WWB lacked standing to appeal because neither had, in its own capacity, objected to the settlement or

appeared at the hearing regarding it. He also argued that the appeals were equitably moot because neither party had moved below to stay the sale, which had progressed such that unwinding it would be inequitable.

The district court agreed and dismissed the appeals. With respect to the standing issue, the district court concluded that, under Ninth Circuit precedent, parties generally must have objected and attended the hearing below to have appellate standing. The court followed the Seventh Circuit's decision in *In re Ray*, 597 F.3d 871 (7th Cir. 2010), which held that a law firm did not have standing to appeal a decision of the bankruptcy court when the firm had appeared below only on behalf of its client. The district court held in the alternative that the law firms' failure to seek a stay made their appeals equitably moot.

The law firms now appeal, arguing that, despite their failures to explicitly object below, the bankruptcy court was aware of their positions and clearly understood that they intended to object on their own behalves, and also that their failures to seek a stay do not render their appeals equitably moot.

The crucial issue in this case is whether the law firms forfeited their objection to the bankruptcy court's settlement order given that neither firm, in its own capacity, objected to the settlement or attended the hearing concerning it. We have previously stated in dicta that attendance and objection were necessary preconditions to a party satisfying the "person aggrieved standard" and thus having standing to appeal an order of the bankruptcy court. *Brady v. Andrew* (*In re Commercial W. Fin. Corp.*), 761 F.2d 1329, 1335 (9th Cir. 1985). But recently, in *Harkey v. Grobstein* (*In re Point Center Fin., Inc.*), we clarified that attendance and objection are not prudential standing requirements in bankruptcy

cases, but rather relate to whether a party has waived or forfeited its right to appeal a given order of the bankruptcy court.  890 F.3d 1188, 1193 (9th Cir. 2018).

Under *Point Center*, then, the law firms' failing to appear and object does not defeat their standing to bring this appeal. Our solution in *Point Center* was to remand for the district court to determine in the first instance whether the appellants there had forfeited those claims and whether the bankruptcy court had committed plain error.  *Id*. at 1194.  That is our usual practice: "When a district court improperly dismisses a bankruptcy appeal without reaching the merits, we generally reverse the district court's dismissal and remand for the district court's consideration of the appeal in the first instance."  *Mastro v. Rigby*, 764 F.3d 1090, 1097 (9th Cir. 2014).

But remand is not mandatory, nor is it advisable here. Unlike in *Mastro*, where "[n]othing in the record concerning Linda's appeal ma[de] it an exception to this general rule," *id*., the unusual situation here is that district court, as well the parties' briefing and oral argument on appeal, squarely addressed the attendance and objection requirement but referred to it as a rule of standing rather than waiver or forfeiture.  The record is therefore sufficient for us to decide the issues now presented.  Moreover, we are "in as good a position as the district court" to determine whether the law firms have forfeited their objections to the settlement agreement, given that both we and the district court review orders of the bankruptcy court in an appellate capacity.  *See Kasdan, Simonds, McIntyre, Epstein & Martin v. World Savings & Loan Ass'n* (*In re Emery*), 317 F.3d 1064, 1069 (9th Cir. 2003).  Further, we can affirm the district court's dismissal "on any basis supported by the record even if the district court did not rely on that basis."  *Shaw v. Cal. Dep't*

*of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir. 1986) (citing *United States v. County of Humboldt*, 628 F.2d 549, 551 (9th Cir. 1980)). Such affirmance, on a factually related but legally distinct alternative ground, is warranted in this case.

The law firms have forfeited their claims regarding the propriety of the settlement order because neither firm attended the hearing or objected to the settlement in its own capacity. Although the record shows that the bankruptcy court harbored concern about how administrative claimants like the law firms would be paid under the settlement, it does not follow that the court understood that each firm intended to object on its own behalf. They therefore have not preserved those rights.

The record lacks any clear indication that either WWB or R&H meant to object on its own behalf. Neither firm explicitly stated at the July 19 hearing that it was appearing on its own behalf. Holly Estes of WWB twice stated that she was appearing "on behalf of the debtor, Wrightwood Guest Ranch." Similarly, Doug Plazak of R&H stated that his appearance was on behalf of the creditors' committee: "Doug Plazak, Reid & Hellyer, for the Creditors' Committee." Moreover, Plazak opened his remarks by stating, "It's almost difficult to know where to begin with what the Committee finds flawed with the proposed compromise . . . ." Finally, neither firm filed a written objection to the settlement or announced at the hearing that it meant to object on its own behalf. Unlike in *Point Center*, where the appellants explicitly informed the bankruptcy court about their positions, albeit in a tardy manner, 890 F.3d at 1190–91, 93, here neither law firm ever said that it intended to pursue its own interests. Forfeiture therefore applies because the law firms did not timely assert their

rights to object to the settlement agreement. *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017) ("The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment or abandonment of a known right." (internal quotation marks and alterations omitted)).

The facts discussed above further demonstrate why the remand we ordered in *Point Center* is not warranted here. In *Point Center*, we held that, although the appellants had not affirmatively waived their claims, "the question of forfeiture" remained "open," so we remanded for the district court to make that determination in the first instance. 890 F.3d at 1193. But here, the law firms' total failure to inform the bankruptcy court that they intended to pursue their own interests closes the remedial door that *Point Center* left "open." *Id.* There, although the appellants did not file a written objection or attend the hearing, they quickly realized the error and "filed a motion to reconsider with the bankruptcy court before it had issued a written order on the motion," which the bankruptcy court considered and rejected on the merits. *Id.* Nothing like that happened in this case; indeed, the bankruptcy court apparently did not receive formal notice of the law firms' positions until each firm filed its notice of appeal. Unlike in *Point Center*, these facts make clear that the law firms have not preserved their objection.

The law firms urge us to excuse the attendance and objection requirement because, despite their failures to enter an appearance or object on the record, the bankruptcy court understood that they intended to object to the settlement. To be sure, both firms did make the kind of arguments that an administrative creditor would make. Holy Estes of WWB

argued that the $350,000 payment was not a surcharge and should instead be paid to the estate to be distributed in accordance with priority rules. WWB highlights the following excerpts from the hearing transcript as establishing its intent to object on its own behalf:

> [M]y argument, Your Honor, would just be that the $500,000 that is part of the settlement agreement that Greenlake has stated they really don't care what happens to it that that really is just a gift to the estate and that that gift is for the benefit of the estate and it becomes unencumbered property to the estate . . . and . . . should be readily distributed within the confines of the Bankruptcy Code."

> . . . .

> . . . [T]he Trustee should not be allowed to reorganize the estate in some fundamental fashion that would allow for distributions outside of the normal distribution scheme and bankruptcy. And I think the distributions . . . of $350,000 to the other administrative claimants who should be on par with the remaining administrative claimants in this case would be unjust and outside of . . . what should be taking place in a bankruptcy setting.

Doug Plazak of R&H also repeatedly discussed the compensation of administrative claimants. R&H points to the following statements by Mr. Plazak as showing its intent to object on its own behalf:

> I would like to point out the fact . . . and get it on the record that . . . the Chapter 11 Trustee has a fiduciary duty to both the professionals, which would include my office, would include debtor's counsel and also the unsecureds, that it has a duty of loyalty to not put its self-interest in front of any of its other fiduciaries, that there are several cases that talk about this inherent conflict that they have.
>
> . . . [W]hat I thought was the most accurate was a case called *In Re: Resource Technology*, 365 B.R. 435 (446) where it talks exactly about this inherent conflict that a trustee and trustee's counsel have when it seeks to structure a deal where it has—for a surcharge—to receive a surcharge in exchange for foregoing—or allowing a secured creditor to go forward when they otherwise would have potentially a foreclosure.

Mr. Plazak also argued that "[o]ne of the principal duties of the Chapter 11 Trustee is the duty of loyalty. He has got a fiduciary duty to the estate which comprises . . . administrative professionals. And the duty of loyalty is that you cannot act in your own self-interest."

Moreover, statements by the bankruptcy court and trustee's counsel show that both understood that the settlement posed a problem with respect to administrative-claimant compensation. The bankruptcy court at one point said the following about administrative-claimant compensation:

> I wondered, if I were committee counsel I would be saying, gosh, if Judge Clarkson does what they want me to do and take away the earmark of the surcharge [to the Trustee of $350,000], and take away the earmark of the 150,000 [to the unsecured creditors], there might be more that is going to go to the administrative side [for creditors' committee counsel] and less to the unsecured creditors than what the deal has now set out.

The court asked at least three times how the creditor's committee professionals would be paid. The court also noted that "Committee counsels aren't going to get anything," and that "from their point of view it seems like a raw deal."

Trustee counsel discussed administrative compensation at length with the court, responding to many of the inquiries just mentioned. In addition, trustee counsel explained that creditors' committee counsel could "share in that 350 [thousand-dollar surcharge] [if] he files an application and shows that he benefitted the collateral somehow. . . ." Trustee counsel later returned to the issue and highlighted the potential conflict of interest it presented, saying that "apparently the committee wants a foreclosure, which if we are [to] talk about duty of loyalty and inherent conflicts, that's it right there." To that the court responded, "Well, he is willing to roll the dice." To which trustee counsel responded, "It's not that. He's willing to roll the dice because he supposedly is not getting paid now. So he is putting his [interests above his client's]—you know, so the whole inherent conflict issue, Your Honor, you should set [the committee's objection] aside."

At bottom, although this contextual evidence might suggest that the bankruptcy court and trustee were aware that the law firms had concerns about the settlement, that does not mean that the court and trustee understood that the law firms were formally objecting to the settlement on their own behalves.  Indeed, Estes and Plazak affirmatively stated that they were appearing on behalf of their clients, and there was no explicit statement that otherwise indicated that the law firms intended to appear or object on their own behalves. The contextual evidence on which the law firms rely is simply not enough to undo what the record makes clear: the law firms were at the hearing and objecting on behalf of their clients.

This conclusion is particularly strong with respect to Reid & Hellyer.  As made clear in a later court document, the bankruptcy court apparently did not consider that firm to have objected on its own behalf.  The bankruptcy court noted, in its order rejecting R&H's motion to withdraw as counsel, that "Reid & Hellyer never opposed the settlement motion in their own capacity as administrative claimants." What is more, if R&H *were* representing both itself and the creditors' committee at the hearing, there is a good chance that it would have created a conflict of interest.  The settlement earmarked money for the unsecured creditors represented by R&H but left nothing for the firm or any other non-trustee administrative claimant.  If the settlement were overturned, then R&H as an administrative claimant would have priority over the unsecured creditors represented by the firm. *See Ray*, 597 F.3d at 876.  Thus, R&H's incentives for opposing the settlement were different from those of its client, the creditors' committee.  Like the district court, we "doubt[] that Reid & Hellyer would have intentionally and knowingly caused a conflict of interest between the firm and its client by appearing and objecting on the firm's behalf at

the hearing," and therefore we agree that "[t]he more logical conclusion is that the firm appeared on behalf of only its client at the hearing before the bankruptcy court."

With respect to WWB, its position as debtor's counsel does not excuse its failure to make its position clear on the record. WWB argues that Estes's statements at the bankruptcy hearing must have been objections on WWB's behalf because "a debtor has no right to object in a non-surplus case." That is because the debtor necessarily has no pecuniary interest when there will be nothing left over after paying all claims and expenses, and the bankruptcy court here had already mentioned the possibility that the case would be "administratively insolvent." WWB submits that "the reason that no one had any question as to [its right to object] is because they understood that it was Debtor's counsel, not Debtor, objecting to the settlement." However, the trustee's and the bankruptcy court's failures to question the debtor's objecting at the hearing—which may well have been inadvertent—were not tacit concessions that they understood WWB to be objecting on its own behalf, thereby excusing WWB's own failure to make its appearance and objection clear on the record. If Estes's appearance and objection were meant to be on WWB's behalf, she should have said so, rather than stating (twice) that she was appearing "on behalf of the debtor, Wrightwood Guest Ranch."

When it comes to the attendance and objection requirement, the dispositive question is whether there is any evidence in the bankruptcy-court record that an attorney entered an appearance on behalf of the would-be appellant, objected to the relevant order on behalf of the would-be appellant, or otherwise informed the bankruptcy court that he or she was representing the interests of the would-be

appellant. *See id.* at 875–76. When a party has not objected to an order in writing and the record contains no explicit indication that a party meant to object, a party has normally failed to preserve its objection to that order. Requiring parties to make their objections clear on the record is not an onerous burden, and it is one that ensures that the bankruptcy court is squarely presented with the facts and legal arguments necessary to reach a reasoned decision considering the interests of all affected parties. *See id.* at 876. Whether we refer to the attendance and objection requirement as one of "standing," or now as one of "forfeiture," it serves the same interests of economy, efficiency, and notice that are crucial to the orderly functioning of the bankruptcy system. *See Commercial*, 761 F.2d at 1335.

Finally, having determined that the law firms failed to preserve their objection to the settlement agreement, we will assume without deciding that we should review the bankruptcy court's approval of the agreement for plain error rather than dismiss the case without reaching the merits, as we would have done under the old cases referring to attendance and objection as matters of appellate standing. *See Point Center*, 890 F.3d at 1194 (remanding to the district court to decide "whether Appellants forfeited their opposition to the Assumption Motion and, if so, whether the bankruptcy court's granting of the Motion should be reviewed for plain error"). We reverse on plain-error review "only in extraordinary cases . . . where the integrity or fundamental fairness of the proceedings . . . is called into serious question." *Bird v. Glacier Elec. Coop., Inc.*, 255 F.3d 1136, 1148 (9th Cir. 2001). Such reversal must be "necessary to prevent a miscarriage of justice." *Draper v. Rosario*, 836 F.3d 1072, 1084–85 (9th Cir. 2016) (quoting *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir.

2002)).  This is no such case.  The complained-of error here is the bankruptcy court's approving the settlement agreement containing the disputed 506(c) surcharge.  However, our published decision in *Debbie Reynolds Hotel & Casino, Inc v. Calstar Corp.* (*In re Debbie Reynolds & Casino, Inc.*), authorizes the very kind of agreed-to surcharge that the law firms now dispute.  255 F.3d 1061, 1067–68 (9th Cir. 2001).  Moreover, the bankruptcy court reasonably concluded that the trustee tried and failed to sell the property at market, and that the settlement would prevent litigation and benefit both the unsecured and senior secured creditors.  Settlements should be "in the best interests of the estate," *CAM/RPC Elecs. v. Robertson* (*In re MGS Mktg.*), 111 B.R. 264, 266–67 (9th Cir. BAP 1990) (citing *Sandoz v. Bennett* (*In re Emerald Oil Co.*), 807 F.2d 1234, 1239 (5th Cir. 1987), and "reasonable, given the particular circumstances of the case," *Martin v. Kane* (*In re A & C Props.*), 784 F.2d 1377, 1381 (9th Cir. 1986).  In addition, the compromise must be "fair and equitable."  *Id.*  On plain-error review, we cannot say that the settlement reflected such a grossly impermissible balance of the interests of the various stakeholders involved in this bankruptcy, such that it constitutes a "miscarriage of justice" warranting our reversal.

Accordingly, we need not address the district court's alternative holding that these appeals are equitably moot.

The judgment of the district court is **AFFIRMED**.[1]

---

[1] Appellants' motions to take judicial notice, filed February 13, 2017, March 23, 2017, and March 27, 2017, are **DENIED**.